IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AMBIX INTERNATIONAL, INC., a Florida Corporation, | ) ) ) | |
| Plaintiff, | ) ) | 8:04CV342 |
| vs. | ) ) | ORDER |
| SAV-RX, L.L.C., a Nebraska Corporation, and MELALEUCA, INC., an Idaho Corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

    This matter is before the court on the plaintiff Ambix International, Inc.'s (Ambix) Motion to Compel (Filing No. 50). Ambix seeks to compel the defendant Sav-Rx, L.L.C. (Sav-Rx) to answer an interrogatory question and a request for production over objection. Ambix filed a brief (Filing No. 51), an affidavit (Filing No. 52) and an index of evidence (Filing No. 53). Sav-Rx filed a brief (Filing No. 66) and an index of evidence (Filing No. 68) in opposition to Ambix's motion. Ambix then filed a reply brief (Filing No. 71). The defendant Melaleuca, Inc. (Melaleuca) did not participate in the briefing of Ambix's motion.

## BACKGROUND

    The plaintiff's amended complaint alleges the following set of facts. **See** Filing No. 3. On or about January 31, 2001, the plaintiff, Ambix, entered into a business relationship with the defendant, Sav-Rx. The agreement provided Ambix would market Sav-Rx's private label, co-branded discount prescription drug purchasing program to Plan Sponsors. Plan Sponsors are employers or membership based groups. These Plan Sponsors could enter into an agreement wherein they would purchase from Sav-Rx, at a set price, the Discount Program and then resell the Discount Program to their employees or members for a higher price. Beginning in February 2001, Ambix and Sav-Rx began negotiating and proposing the Discount Program to Melaleuca. Melaleuca is a membership based

company, which sells health and household products through independent marketing executives.

On July 26, 2002, Sav-Rx and Melaleuca entered into a contract for the Discount Program. Ambix alleges a part of the contract was made to benefit Ambix, such that Melaleuca would pay Ambix a fee of $7.00 for each Melaleuca member enrolled in the Discount Program. Under the contract Sav-Rx would receive $2.00 of that fee per enrollment. Further, Ambix alleges Melaleuca has failed and refused to pay Ambix under the terms of the contract. Ambix was paid $2.00 per enrolled member, for reasons not relevant to this motion. Based on these facts, Ambix alleges claims against the defendants for an accounting, breach of a third party contract and unjust enrichment. **See** Filing No. 3. Additionally, Melaleuca alleges claims against Sav-Rx based on a duty to defend and indemnify. **See** Filing No. 56.

Ambix alleges a claim for unjust enrichment. Ambix asserts the benefits of the agreement the parties entered into, including the dispensing fees pharmacies pay to Sav-Rx each time a prescription is filled using the Melaleuca-Rx card, have been retained by the defendants and it is inequitable and unconscionable to allow the defendants to avoid payment to Ambix for the value the defendants received. **See** Filing No. 51, p. 1 (Ambix Brief). In order to obtain information about the funds received by Sav-Rx, Ambix served interrogatories and requests for production. Ambix states counsel spoke, in person and by telephone, and exchanged correspondence concluding with a October 24, 2005 telephone call, regarding the discovery dispute, however no resolution could be reached. **See** Filing Nos. 50 (motion) and 52 (affidavit). On December 15, 2005, Ambix filed the instant motion to compel seeking amended responses to Interrogatory No. 19 and Request for Production No. 16. **See** Filing No. 50.

Interrogatory No. 19 asks:
> Itemize in detail, each and every payment received from pharmacies as dispensing fees or otherwise due to Sav-Rx entering into the agreement with Melaleuca for the Melaleuca prescription drug card plan.

Request for Production No. 16 seeks:

> A copy of each and every report, data, whether electronic or hardbound, that shows the amount of funds received from pharmacies as dispensing fees or otherwise due to Sav-Rx, L.L.C. entering into a relationship with Melaleuca for the Melaleuca prescription card plan. And any other documents, data, electronic or written, which supports Sav-Rx, L.L.C.'s answer to Interrogatory No. 19.

On October 26, 2005, Sav-Rx responded the same way to each request:

> This answering Defendant objects to [the discovery request] for the reason that the information sought is irrelevant, is outside the scope of the pleadings, is not reasonably calculated to lead to the discovery of admissible evidence and the request is unduly burdensome and the burden or expense of the proposed discovery outweighs its likely benefit.

**See** Filing No. 53, Exhibits C and D.

## ANALYSIS

The party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. **St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.**, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (objecting party has the burden to substantiate its objections). Bare assertions that discovery requested is overly broad, unduly burdensome, oppressive or irrelevant are ordinarily insufficient to bar production. *Id.* "The party resisting discovery must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive." *Id.* (citations omitted). The party resisting discovery has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. **See Wagner v. Dryvit Sys., Inc.**, 208 F.R.D. 606, 610 (D. Neb. 2001). This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents. **See** *id.*

3

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." ***Hickman v. Taylor***, 329 U.S. 495, 507 (1947). "To assess relevance in a given case, the court must view the matter in light of the specific claims and defenses asserted by the parties." ***Fletcher v. Atex, Inc.***, 156 F.R.D. 45, 48 (S.D.N.Y. 1994) (citations omitted). "[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken." ***Lewis v. ACB Business Servs., Inc.***, 135 F.3d 389, 402 (6th Cir. 1998) (**citing** ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351-52 (1978)). In the end, however, courts have "wide discretion with respect to discovery matters." ***Spangler v. Sears, Roebuck & Co.***, 138 F.R.D. 122, 123 (S.D. Ind. 1991) (citations omitted); **see** ***Credit Lyonnais v. SGC Int'l, Inc.***, 160 F.3d 428, 431 (8th Cir. 1998).

It is insufficient for the party objecting to discovery based on relevance to simply make conclusory allegations that the request is irrelevant. ***Burnett v. Western Res. Inc.***, CIV. A. No. 95-2145-EEO, 1996 WL 134830, *4 (D. Kan. Mar. 21, 1996). If the discovery sought appears relevant, the opposing party bears the burden of specifically showing how each discovery request is irrelevant. ***Id.*** However, a threshold showing of relevance is necessary before production of information, which does not reasonably bear on the issues in the case, is required. ***Hofer v. Mack Trucks, Inc.***, 981 F.2d 377, 380 (8th Cir. 1993). Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case. **See** ***Cervantes v. Time, Inc.***, 464 F.2d 986, 994 (8th Cir. 1972). Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy, for purposes of discovery, has been defined by the United States Supreme Court as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." ***Oppenheimer Fund***, 437 U.S. at 351. Discovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action.

See **Marker v. Union Fidelity Life Ins. Co.**, 125 F.R.D. 121 (M.D.N.C. 1989); **Morse Diesel, Inc. v. Fidelity & Deposit Co.**, 122 F.R.D. 447 (S.D.N.Y. 1988).

**A.     Relevance**

Ambix argues the information sought is relevant to its claim for unjust enrichment. Ambix argues the amount of money made by Sav-Rx is far greater than the amount of money made by Ambix, which difference is inequitable. James Barta, president and majority shareholder of Sav-Rx, stated in his deposition that Sav-Rx receives up to 90 cents each time a prescription is filled using the Melaleuca card. **See** Filing No. 53, Exhibit E at 13-14 and 82. Ambix alleges there are more than 30,000 prescription cards and with moderate usage for each card, Sav-Rx would earn revenues nearing half a million dollars. In contrast, Ambix received less than $65,000 based on the number of enrollments multiplied by $2.00. Therefore, Ambix argues the information sought by Ambix is relevant to determine the inequities in the revenues each party received as a benefit of the agreement, or the efforts of Ambix. Ambix contends it needs the exact figure Sav-Rx received from the pharmacy dispensing fees for the time period from July 26, 2002 to July 26, 2005, the duration of the contract.

Sav-Rx contends Ambix's claim for unjust enrichment is not related to the dispensing fees pharmacies pay to Sav-Rx each time a prescription is filled, but for any enrollment proceeds. Sav-Rx denies Ambix's claims allege any relationship to the pharmacy dispensing fees or any amounts of money paid to Melaleuca for selling a prescription card. The precise language from Count Three in the amended complaint reads:

> The benefits of the enrollments have been retained by the defendants and it is inequitable and unconscionable to allow the defendants to avoid payment to the plaintiff for the value the defendants received due to the actions of the plaintiff.

**See** Filing No. 3.

The court finds Ambix has failed to meet the threshold burden of showing the pharmacy dispensing fees bear on, or reasonably could lead to other matter that could bear on, any issue that is or may be in the case. From the outset of litigation Ambix sought damages related to the number of prescription plan enrollees. **See** Filing No. 3 (Amended

5

Complaint). The agreements between the parties regarding the apportionment of proceeds have been based on the number of prescription plan enrollees, rather than, for example, a percentage of total revenues received by Sav-Rx. In the alternative, the burden of producing the information requested outweighs any minimal relevance to the issues contained in the pleadings.

**B.     Undue Burden**

"All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." **Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton**, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted). "The fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information." **Wagner v. Dryvit Sys., Inc.**, 208 F.R.D. 606, 611 (D. Neb. 2001).

Ambix argues answering the requests is not unduly burdensome as evidenced by the deposition testimony of Mr. Barta. During the deposition, Mr. Barta was asked about how Sav-Rx was paid by the pharmacies. Mr. Barta explained that Sav-Rx accepts or rejects each pharmaceutical claim and informs the pharmaceutical companies how much to charge on each claim. Sav-Rx receives a contracted-for amount on each claim, for example an amount up to ninety cents. Based on that information, the following exchange took place:

> Q.     And you have no — no data, no document, no report that would allow you to see how much money the Melaleuca card has brought you from those – from that usage?
> A.     I could run a report, I suppose. But have I done it? No.
> Q.     How would you run the report? Would you do it or someone else in your office?
> A.     Somebody else would have to do it.

> Q. Do you know who that is?
>
> A. Any one of a variety of people could do it.
>
> Q. But it's possible?
>
> A. Yeah, if you had a time frame and a – and a thing – yeah, its possible, I think.  It's possible today.  I'm not positive it's possible from three to four years ago, five years ago, but I would guess that we could.

**See** Filing No. 53, Exhibit E at 85.

Sav-Rx contends Mr. Barta's testimony is equivocal and actually incorrect.  Further, the director of operations for Sav-Rx, Lisa Quincy-Rump, attests the process would be difficult and have to be done manually by going through "mountains of paperwork" because the information cannot be extracted from the computer files.  **See** Filing No. 68, Exhibit B. Ambix counters that Sav-Rx failed to set forth greater detail such as the number of hours or cost of the undertaking.  Finally, Ambix contends Sav-Rx produced no affidavit by Mr. Barta retracting his earlier statements.

The court finds Sav-Rx has met its burden of showing production of the requested discovery would create an undue burden.  The court credits the specific testimony of Ms. Qunicy-Rump, who has more intricate knowledge of operations, over the speculative, uncertain and equivocal testimony of Mr. Barta.  Mr. Barta did not say he could produce the information sought, but that he would "guess" that others at Sav-Rx would be able to do it. Secondarily, the burden of producing the requested data outweighs its minimal relevance.

As an additional matter, Ambix states the last conference with counsel regarding the discovery dispute was October 24, 2005.  **See** Filing Nos. 50 (motion) and 52 (affidavit). Counsel for Sav-Rx confirms the parties attempted to resolve the issue.  **See** Filing No. 68, Exhibit C.  Oddly, the discovery responses were dated October 26, 2005.  **See** Filing No. 53, Exhibits C and D.  Be that as it may, Ambix did not file the motion to compel until December 15, 2005.  **See** Filing No. 50.  The discovery deadline in this matter was December 30, 2006, and trial is scheduled for February 21, 2006.  **See** Filing Nos. 30 and 38.  Therefore, Ambix's delay in seeking court intervention would likely have caused a

delay in the trial date had the relief sought been granted. Such burden on the defendants was considered in resolving the motion against Ambix.

Finally, with regard to motions to compel discovery responses, Federal Rule of Civil Procedure 37(a)(4)(B) provides:

> If the motion is denied, the court . . . shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(B). Upon reviewing the circumstances of this case, finding the motion to compel was substantially justified,[1] the court finds sanctions should not be imposed in this matter. Ambix asserted legitimate reasons for the requests, though not ultimately found successful. Thus, the court finds Ambix has shown substantial justification for its position as to the discovery addressed herein. **See** Fed. R. Civ. P. 37(a)(4)(B). Under the circumstances, the court does not find the imposition of sanctions to be warranted in this case and will not assess sanctions against either party with regard to the instant discovery dispute. Upon consideration,

**IT IS ORDERED:**

Ambix International, Inc.'s Motion to Compel (Filing No. 50) is denied.

Dated this 30th day of January, 2006.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge

---

[1] The provisions of Rule 37(a)(4) provide that sanctions may not be appropriate where a motion was substantially justified. "Making a motion, or opposing a motion, is 'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule." Charles A. Wright, et al., ***Federal Practice and Procedure*** § 2288 (2d ed. 1994).